IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHACE S.,<br><br>                  Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>                  Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br>Case #4:21-cv-00069-PK<br><br>Magistrate Judge Paul Kohler |

       This matter comes before the Court on Plaintiff Chace S.'s appeal from the decision of the Social Security Administration denying his application for disability, disability insurance benefits, and supplemental security income. The Court will reverse and remand the administrative ruling.

## I. STANDARD OF REVIEW

       This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether their findings are supported by substantial evidence and whether the correct legal standards were applied.[2] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[3] The ALJ is required to

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

[2] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[3] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

consider all of the evidence, although the ALJ is not required to discuss all of the evidence.[4] If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[5] The Court must evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[6] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[7]

## II.  BACKGROUND

A.  PROCEDURAL HISTORY

In June 2018, Plaintiff filed an application for disability insurance benefits and supplemental security income, alleging disability beginning on May 7, 2018.[8] Plaintiff's claim was denied initially and upon reconsideration.[9] Plaintiff then requested a hearing before an ALJ, which was held on September 30, 2020.[10] The ALJ issued a decision on December 17, 2020, finding that Plaintiff was not disabled.[11] The Appeals Council denied Plaintiff's request for review on May 20, 2021,[12] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[13]

---

[4] *Id.* at 1009–10.

[5] *Richardson*, 402 U.S. at 390.

[6] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[7] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[8] R. at 216–21, 222–23.

[9] *Id.* at 79–80, 113–14.

[10] *Id.* at 49–78.

[11] *Id.* at 18–48.

[12] *Id.* at 1–7.

[13] 20 C.F.R. § 422.210(a).

On June 29, 2021, Plaintiff filed his complaint in this case.[14] On July 15, 2021, both parties consented to a United States Magistrate Judge conducting all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[15] The Commissioner filed an answer and the administrative record on November 3, 2021.[16]

Plaintiff filed his Opening Brief on January 7, 2022.[17] The Commissioner's Answer Brief was filed on March 14, 2022.[18] Plaintiff filed his Reply Brief on March 28, 2022.[19]

B.   MEDICAL HISTORY

Plaintiff alleged disability based on irritable bowel syndrome, knee pain, neuropathy, anxiety, depression, posttraumatic stress disorder ("PTSD"), panic attacks, and spinal arthritis.[20] Plaintiff reported that his PTSD and anxiety resulted in paralyzing panic attacks and that his physical conditions made it difficult for him to lift objects over 20 pounds.[21] The record reflects that Plaintiff has sought out and received treatment for his physical and mental impairments.

---

[14] Docket No. 4.
[15] Docket No. 12.
[16] Docket Nos. 15, 16, 19.
[17] Docket No. 20.
[18] Docket No. 24.
[19] Docket No. 25.
[20] R. at 254.
[21] *Id.* at 267.

C.     HEARING TESTIMONY

Before the ALJ, Plaintiff described a host of physical ailments that affected his ability to work, including back pain, knee and hip pain, neck stiffness, and numbness in his hands and fingers.[22] As to his mental impairments, Plaintiff testified that he suffered from PTSD, anxiety, depression, agoraphobia, and paranoia.[23] He also had regular panic attacks.[24]

D.     THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 7, 2018, the alleged onset date.[25] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: lumbar degenerative disc disease, PTSD with agoraphobia, attention deficit disorder, anxiety, and right knee medial meniscal tear.[26] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment.[27] The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work, with certain modifications including "no numeric quotas or deadlines" and "interaction with supervisors who would be supportive in style."[28] At step four, the ALJ determined that Plaintiff could not perform any past relevant

---

[22] *Id.* at 53, 55–56, 57, and 60.
[23] *Id.* at 64.
[24] *Id.*
[25] *Id.* at 23.
[26] *Id.* at 23–24.
[27] *Id.* at 24–25.
[28] *Id.* at 25–39.

work.[29] At step five, the ALJ found that there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform and, therefore, he was not disabled.[30]

### III.  DISCUSSION

In his decision, the ALJ found the opinions of state agency medical consultants persuasive.  The ALJ noted that the medical consultants concluded that Plaintiff was best suited to work in a setting where ambient stress levels are modest.  Plaintiff argues that the ALJ erred by failing to explain why he did not include this restriction in his RFC assessment.  The Court agrees

The ALJ must articulate "how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record."[31]  The ALJ must explain how he or she considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings but is generally not required to explain how he or she considered other factors.[32]  Social Security Ruling 96-8p emphasizes that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."[33]  "The RFC assessment must include a

---

[29] *Id.* at 39.

[30] *Id.* at 39–42.

[31] 20 C.F.R. § 404.1520c(b).

[32] *Id.* § 404.1520c(b)(2).

[33] SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."[34]

Plaintiff argues that the ALJ failed to adequately explain why he adopted portions of the consultants' opinions but declined to limit Plaintiff to positions with modest ambient stress levels. In response, the Commissioner argues that the ALJ was not required to adopt all of the consultants' opinions. While this is true,[35] it is not Plaintiff's argument. Rather, Plaintiff argues that the ALJ failed to adequately explain why he did not include any limitations on ambient stress in his RFC assessment despite including other limitations identified by the consultants.[36] Such an explanation is important here because, as will be discussed, had the ALJ adopted the limitations on ambient stress levels opined by the consultants, the majority of jobs identified would be eliminated.

The Commissioner asserts that the RFC articulated by the ALJ sufficiently accounted for the consultant's opinions on ambient stress and that Plaintiff has failed to demonstrate how a limitation to modest ambient stress levels would prohibit Plaintiff from working in a loud environment. However, as Plaintiff's opening brief notes, ambient stress "refers to stressful factors in the work environment such as noise, pollution, and temperature extremes."[37] Here,

---

[34] *Id.*; *see also Givens v. Astrue*, 251 F. App'x 561, 568 (10th Cir. 2007) ("If the ALJ rejects any significantly probative medical evidence concerning [a claimant's] RFC, he must provide adequate reasons for his decision to reject that evidence.").

[35] *See* 20 C.F.R. § 404.1513a(b)(1) ("Administrative law judges are not required to adopt any prior administrative medical findings.").

[36] *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence").

[37] Docket No. 20, at 8.

four of the six jobs identified by the ALJ that Plaintiff could perform—hand packager, cleaner, power screwdriver operator, and can filler—require a loud noise environment. A limitation to moderate noise levels would eliminate these positions. Thus, Plaintiff has shown why the ALJ's failure to discuss this limitation is important.

The Commissioner argues that, to the extent there was an error, it was harmless because there are still jobs that exist in significant numbers even if the four jobs with loud noise environments are removed. The Court may hold an ALJ's error harmless "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."[38] "In conducting our review, we should, indeed must, exercise common sense."[39] Where a significant number of jobs remain after the non-qualifying jobs are removed, any error by the ALJ is harmless.[40]

The Commissioner is correct that a significant number of jobs would remain if Plaintiff could perform the other two other jobs identified by the ALJ—marker and liner. But this argument runs into difficulty when the job description of "marker" is compared with Plaintiff's RFC. The RFC included a limitation of "no numeric quotas or deadlines."[41] However, the Dictionary of Occupational Titles' ("DOT") definition of "marker" requires "[a]ttaining precise set limits, TOLERANCES, and standards."[42] Courts have interpreted this language "as barring

---

[38] *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

[39] *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

[40] *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009).

[41] R. at 25.

[42] DOT 209.587-034, 1991 WL 671802 (Jan. 1, 2016).

fast-paced or production-quota work."⁴³  This presents another unresolved conflict between the RFC and the jobs identified.  If the job of "marker" was removed, along with the four other jobs possibly eliminated because of the noise restriction, only one position would remain—liner with 4,000 jobs in the national economy—and the Commissioner has not argued that this is a significant number.

The Commissioner nevertheless argues that the ALJ's decision is supported by the testimony of the vocational expert, who opined that the hypothetical individual identified by the ALJ could perform the jobs identified.  However, because there was a conflict between the vocational expert's testimony and the description in the DOT, "the ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability."⁴⁴  Because he did not, the ALJ's decision must be remanded for further proceedings and the Court need not reach Plaintiff's remaining argument.⁴⁵

---

⁴³ *Sara A. v. Saul*, Civil No. 3:19cv144, 2019 WL 6606861, at *24 (N.D. Ind. Dec. 5, 2019) (citing *Sandra H. v. Comm'r of Soc. Sec.*, No.: 2:17-CV-403-FVS, 2019 WL 289811, at *7 (E.D. Wash. Jan. 22, 2019)).

⁴⁴ *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999).

⁴⁵ *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (stating that the court "will not reach the remaining issues raised by [Plaintiff] because they may be affected by the ALJ's treatment of this case on remand").

## IV. CONCLUSION

It is therefore

ORDERED that the ALJ's decision is REVERSED AND REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for the purposes of conducting additional proceedings as set forth herein.

DATED this 26th day of May, 2022.

BY THE COURT:

_____
PAUL KOHLER
United States Magistrate Judge